IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| JAMES M. FOX, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV-07-274-S-CWD |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| WARDEN HARDISON, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Pending before the Court are Petitioner's motion to appoint counsel (Docket No. 14), Respondent's motion for extension of time (Docket No. 27), Respondent's motion for summary judgment (Docket No. 18), and Respondent's motion for leave to file excess pages (Docket No. 19).   Having reviewed the pending motions, responses, and the state court record in this case, the Court determines that oral argument is unnecessary.  After careful consideration of the record and the parties' arguments, the Court enters the following Order.[1]

---

[1]  This case was reassigned to this Court after all parties consented to the jurisdiction of a United States Magistrate Judge to enter final orders in the case.  (Docket Nos. 8, 9, & 11.)

MEMORANDUM DECISION AND ORDER 1

## BACKGROUND

Petitioner was charged with the crime of felony injury to child for beating his five-year-old son, M.F., with a 22-inch by 2-inch wooden shoehorn after the child allegedly strangled the family's dog.  (State's Lodgings A-1, pp. 13-14; A-2, p. 36; A-3, pp. 2-3 & 25.)  Petitioner pled guilty to the charge in the Fifth Judicial District Court in Gooding County, Idaho.  Judgment was entered on October 29, 2002.  (State's Lodging A-1, pp. 18-19 & 24-33.)  Petitioner was sentenced to a fixed ten-year term, but was placed on probation in lieu of serving his sentence.

On July 24, 2003, while on probation, Petitioner was ordered to serve thirty days in jail for various probation violations, including testing positive for the drug TCH and failing to attend counseling.  (State's Lodging A-1, pp. 44-45.)  Next, Petitioner had another probation violation in a misdemeanor domestic battery case, CV2001-714, in which he had been placed on probation for 24 months in lieu of 6 months' jail time.  Probation in that case was revoked, and he was jailed from September 13, 2004 until March 4, 2005. (See State's Lodging B-1, p. 2; see Register of Action in Case No. CV2001-714, *State of Idaho v. James Michael Fox*, at www.idcourts.us/repository.)

On March 8, 2005, just days after he was released from jail, Petitioner battered and choked his wife in front of M.F. and the couple's other three small children.  (State's Lodging A-2, pp. 52-62.)  As a result, Petitioner was charged with a separate crime, felony domestic violence, as well as with a probation violation on the 2002 conviction for felony injury to child.  The state district court found Petitioner in violation of his

probation as a result of committing the new felony domestic violence offense.  (State's Lodging A-2, p. 79.)  After the guilt phase portion of the probation violation hearing, Petitioner moved the court for a continuance of disposition until after the criminal trial in the felony domestic violence case.  The court denied Petitioner's motion, revoked his probation, and ordered his sentence executed.  (State's Lodging A-2, pp. 80-94; A-1, pp. 55-66.)  Petitioner then made an oral motion under Rule 35 to reduce his sentence, but the court denied his request.  (State' Lodging A-1, pp. 55-66; A-2, p. 89 & pp. 92-94.)

Petitioner raised two claims on direct appeal: (1) whether the district court abused its discretion when it denied the motion for a continuance, where the basis of the motion was to avoid the dilemma of forcing him to waive his due process rights in order to preserve the right against self-incrimination; and (2) whether the district court abused its discretion in denying Petitioner's Rule 35 motion in light of mitigating circumstances. (State's Lodging B-3, p. 3.)  The Idaho Court of Appeals affirmed the conviction and sentence on direct appeal, and the Idaho Supreme Court denied Petitioner's petition for review.  (State's Lodgings B-1 to B-9.)

Petitioner next filed a petition for post-conviction relief, raising the same issues as in his direct appeal, as well as additional claims, including ineffective assistance of counsel and conflict of interest claims.  (State's Lodgings C-1 & C-2.)  The state district court issued a notice of intent to summarily dismiss the petition, setting forth in detail the reasons supporting dismissal.  (State's Lodging C-4.)  Petitioner did not respond to the notice, and the court subsequently dismissed the petition.  (State' Lodgings C-5 & C-6.)

MEMORANDUM DECISION AND ORDER 3

Petitioner appealed the dismissal of the petition, but his appeal was dismissed for failure to pay the record preparation fee.  (State's Lodging D-1.)

Petitioner's present habeas corpus case was filed in federal court on June 21, 2007. (Docket No. 15.)  Respondent filed a Motion for Summary Judgment on May 16, 2008. (Docket No. 18.)  Petitioner has not filed a response.

## PRELIMINARY MOTIONS

### A.    Petitioner's Motion for Appointment of Counsel

Petitioner has requested appointment of counsel in this case.  There is no constitutional right to counsel in a habeas corpus action.  *Coleman v. Thompson,* 501 U.S. 722, 755 (1991).  However, a habeas petitioner has a right to counsel, as provided by rule, if counsel is necessary for effective discovery or if an evidentiary hearing is required in his case.  *See* Rules 6(a) & 8(c) of the Rules Governing Section 2254 Cases.  In addition, the Court may exercise its discretion to appoint counsel for an indigent petitioner in any case where required by the interests of justice.  28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B).  Whether counsel should be appointed turns on a petitioner's ability to articulate his claims in light of the complexity of the legal issues and his likelihood of success on the merits.  *See Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

Petitioner alleges that he suffers from a variety of mental health impairments and disorders.  (Motion for Appointment of Counsel, p. 1.)  However, he provides no recent mental health records or medical opinions to support his contention that he is unable to represent himself in this matter.  A psychological evaluation from November 2002

indicates that he has borderline intellectual functioning.  He attended special education classes in school and apparently has not completed his GED. (See State's Lodging A-3.)

The Court notes that Petitioner did not file a response to the state court's notice of dismissal of his post-conviction case, did not follow through with payment of fees on appeal, and did not file a response to the pending motion for summary judgment in this action.  However, in this case Petitioner has been able to file a petition, notices, and a motion to protect his interests.  His recent filings have been coherent and appropriate and do not demonstrate that he is unable to pursue this case.

As more fully described herein, the petition's lack of merit weighs heavily against appointment of counsel, and the Court concludes that appointment of counsel would not substantially increase Petitioner's chances of obtaining relief, given the substance of Petitioner's claims and the high standard mandated by Congress for obtaining relief in federal habeas corpus actions.  Neither discovery nor an evidentiary hearing is required in this case.  While Petitioner does appear to have some mental and physical health challenges, they do not appear to have rendered him unable to protect his interests in this action.  Most state prisoners proceed in their habeas corpus actions without appointment of counsel, even though they do not have adequate legal training.  As a result of all of the foregoing, Petitioner's motion for appointment of counsel will be denied.

However, because Petitioner may have thought that he was not required to file a response to the pending motion for summary judgment filed by Respondent until after the Court ruled upon his motion for appointment of counsel, the Court will provide Petitioner

MEMORANDUM DECISION AND ORDER 5

with an additional opportunity to file a brief in response to this Order, where he may point to facts in the record or make argument to show why the conditional granting of Respondent's motion for summary judgment should not be made final and his case dismissed with prejudice.

Respondent has filed a motion for extension of time to file a motion for summary judgment (Docket No. 17) and a motion for leave to file excess pages (Docket No. 18). Good cause appearing, these motions are granted. Respondent's motion for summary judgment has been deemed timely filed, and the entire memorandum submitted by Respondent has been considered.

## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

**A.      Standard of Law**

The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure. Rule 11 of the Rules Governing Section 2254 Cases. Under the Federal Rules of Civil Procedure, summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In general, summary judgment is not inconsistent with established habeas practice and procedure. *See Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977). However, the summary judgment standards must be applied in light of the substantive law governing habeas proceedings.

The Petition in this case is subject to the provisions of the Anti-terrorism and

Effective Death Penalty Act (AEDPA), which was enacted in 1996.  The AEDPA established a deferential standard of review that a federal habeas court must apply to a state court's resolution of constitutional claims.  The federal habeas court reviews the state court's "last reasoned decision."  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).

Under the AEDPA, a federal court may grant habeas relief only if the state court's adjudication on the merits:

1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" federal law when the state court applied a rule of law different from the governing law set forth in United States Supreme Court precedent, or when it confronted a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrived at a different result.  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

A state court's decision is an "unreasonable application" of federal law when the court was unreasonable in applying the governing legal principle to the facts of the case.  *Id*. at 413.  A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision was incorrect; instead, the decision must be "objectively unreasonable."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  Though the

source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit law may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

Under AEDPA, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(e)(1).  As a result, a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2).

## B.     Discussion

Petitioner's first claim is based on "Article I; sections[2] 1, 6, 7, 8, 9, 13, and 18 and 19." (Petition, p. 2, Docket No. 3).  His second claim is based on "(amendments) - 1, 5, 6, 8, 9, 10 and 14)." (*Id.*)  Both claims reference an affidavit of facts, where he lists a variety of sub-claims.  This appears to be the same list of claims Petitioner pursued in his state post-conviction case.

Preliminarily, the Court concludes that any claim based upon the following constitutional provisions are subject to denial for failure to state a claim upon which relief can be granted: Article I (duties and limitations of the legislative branch of the

---

[2]  The Court construes "sections" as "amendments," because there are only ten sections under Article I of the Constitution.

government), Seventh Amendment (preserving right to jury trial "in suits at common

law"),[3] Ninth Amendment (unenumerated powers reserved),[4] Tenth Amendment (non-

delegated powers reserved),[5] Thirteenth Amendment (slavery/involuntary servitude),

Eighteenth Amendment (prohibition), and Nineteenth Amendment (women's voting

rights).  In addition, Petitioner has stated no facts that would state a claim for habeas

corpus relief under the First Amendment (free speech, association, religion, petition for

redress).  This leaves Petitioner's claims based upon the Fifth, Sixth, Eighth, and

Fourteenth Amendments.  The Court will address each subdivision of Petitioner's claims

upon which these remaining constitutional provisions may be applicable.

---

[3] The Seventh Amendment applies only to civil, not criminal, actions.  *See United States v. Pelullo*, 14 F.3d 881, 895 (3d Cir. 1994).

[4] In *Strandberg v. City of Helena*, 791 F.2d 744 (9th Cir. 1986) (civil rights context), the Ninth Circuit held that "the Ninth Amendment has not been recognized to independently secure any constitutional right."  *Id*. at 748.

[5] *See Heurta v. Sullivan*, 2006 WL 2501529, *2 (D. Cal. 2006) (habeas claim based on the Tenth Amendment was "plainly without merit").

1.    <u>Conflict of Interest-Later Business Dealings of Counsel</u>

Petitioner alleges that his defense attorney, Severt Swenson, Jr., had a conflict of interest.  He offers evidence that Mr. Swenson and the prosecutor, Philip A. Brown, started a law practice together sometime after Petitioner's 2002 felony injury to child conviction.  Petitioner raised this claim in his state post-conviction petition.

The Sixth Amendment right to counsel includes the "correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981).  Even if a petitioner can establish an actual conflict of interest, he cannot obtain relief unless he can show that his attorney's conflict of interest adversely affected his performance.  *Mickens v. Taylor*, 535 U.S. 162 (2002).

The Information charging Petitioner in this case was filed on September 11, 2002.  He pled guilty on October 29, 2002, and was sentenced on December 10, 2002.  As evidence of the conflict of interest, Petitioner submitted a letter bearing letterhead of "Brown, James & Swenson," dated April 27, 2006.  (State's Lodging C-2, Exhibit I, p. 1.)  On post-conviction review, the state district court determined that, during Petitioner's criminal action, attorneys Brown and Swenson were not affiliated with one another.  In addition, the court determined that, when Petitioner was later prosecuted for his probation violation, a different prosecutor, Calvin Campbell, was assigned to the case.  As a result, the state district court summarily dismissed Petitioner's claim for failure to support the allegations with any reasonable evidence in the record.  (State's Lodging at C-4, pp. 7-8.)

Upon  review of the state court record, the Court concludes that nothing in the

record supports a contrary factual or legal conclusion.  There is no evidence that these two attorneys, Brown and Swenson, had business or other professional ties during Petitioner's prosecution of the original felony injury to child conviction or during the probation revocation proceedings that followed.

The record reflects that when Mr. Swenson filed the notice of appeal from the order revoking Petitioner's probation on May 16, 2005, he listed his business address as 122 Fourth Avenue West.  (State's Exhibit A-1, p. 67.)   Letters from Mr. Swenson to Petitioner from early April 2006, nearly one year later, bear letterhead showing that he practiced law alone at that address.  There is no evidence that Mr. Swenson represented Petitioner after May 16, 2005.  The letter from Mr. Swenson to Petitioner on April 27, 2006, after he no longer represented Petitioner, was from "Brown, James & Swenson" at 130 Fourth Avenue West.  (State's Lodging C-2, Exhibit I, p. 1.)  On May 4, 2006, another letter from Mr. Swenson to Petitioner was prepared on Mr. Swenson's prior letterhead; however, that letter stated: "After your probation was revoked and the appeal was filed, my representation of you effectively ended."  (State's Lodging C-2, Exhibit V, p. 4.)

Even if Mr. Swenson and Mr. Brown had opened a law practice together or had a close business or personal relationship that might raise a question of conflict of interest during Mr. Swenson's representation of Petitioner during the later probation revocation proceedings when Mr. Brown was no longer the prosecutor (and the record contains no such evidence), there is no evidence of any adverse effect on the representation, as

required by the *Mickens v. Taylor* standard.  As a result of all of the foregoing, Petitioner has not shown either that the state court's decision was based on an unreasonable determination of the facts in light of the evidence, or that the decision was contrary to, or involved an unreasonable application of, United States Supreme Court precedent.  *See* 28 U.S.C. § 2254(d).  Accordingly, he is not entitled to habeas corpus relief on this claim.

       2.       Conflict of Interest-Prosecutor and Petitioner' Wife

Petitioner next alleges that Colin Campbell, the prosecutor in the probation violation hearing who worked on the case beginning in March of 2005 (State's Lodging A-1, p 46.), had a conflict of interest.  Petitioner does not allege that Mr. Campbell ever represented him.  Rather, Petitioner alleges that Mr. Campbell previously represented Petitioner's wife, Cizzie Ann Fox, when grandparents of the Fox children initiated a Health and Welfare custody- or visitation-type action involving the children of Petitioner and Cizzie Ann.  (See State's Lodging C-2, Exhibit I, p. 2 & Exhibit VII, p. 1.)  Mr. Campbell's legal representation of Cizzie Ann Fox was contemporaneous with Petitioner's sentencing in December 2002 (when Philip Brown was the prosecutor), and both actions involved the same child victim.  (Petitioner pled guilty to physically abusing the child in the criminal action for felony injury to child.)  (*Id.*)  There is no evidence in the record that Colin Campbell was a prosecutor in 2002.  This "conflict of interest" claim was presented in Petitioner's post-conviction action and is included in his federal petition.

A criminal defendant may challenge prosecutorial misconduct as a "due process violation" and secure relief if the misconduct is "of sufficient significance to result in the

denial of the defendant's right to a fair trial." *Greer v. Miller*, 483 U.S. 756, 765 (1987);

*United States v. Hasting*, 461 U.S. 499, 506 (1983).  Where a prosecutor who has

previously represented the wife of the accused fails to disclose the conflict, the court

should consider whether any prejudice occurred to the accused.  *See U.S. v. Golston*, 53

M.J. 61, 66-67 (U.S. Armed Forces 2000).[6]

Here, the prosecutor previously represented Petitioner's wife in a custody action

adverse to Petitioner and regarding the same child who was the victim of the crime with

which Petitioner was charged.  However, Mr. Campbell did not prosecute Petitioner in the

criminal action case-in-chief, but prosecuted Petitioner in a later probation violation

where Petitioner was accused of beating his wife, Cizzie Ann, who was Mr. Campbell's

former client.

On this claim, the state court determined that Petitioner had not demonstrated Mr.

Campbell's prior representation of Cizzie Ann Fox "led to any sort of bias or prejudice

which would require Campbell to prosecute Fox [in the later probation proceedings] any

more vigorously than he would have prosecuted him without the earlier representation."

(State's Lodging C-4, p. 7.)

This Court agrees.  Here, Petitioner has not provided any evidence showing that

the prosecutor's prior representation of Petitioner's wife in a custody or visitation action

---

[6]  *See Duhaime v. Ducharme*, 200 F.3d at 600-01 (lower court cases may be used on federal habeas corpus review not as precedent, but to show how other courts have applied Supreme Court precedent).

that was contemporaneous with Petitioner's sentencing worked any prejudice to Petitioner's later probation case (where the wife was now the victim) such that the prosecutor would have pursued the case differently.  Particularly, the fact of Petitioner's repeated abuse of his family members speaks for itself.  As a result, Petitioner has not shown either that the state court's decision was based on an unreasonable determination of the facts in light of the evidence, or that the decision was contrary to, or involved an unreasonable application of, United States Supreme Court precedent.  As a result, Petitioner's claim fails under § 2254(d)(1) and (2), and he is not entitled to habeas corpus relief.

      3.    <u>Attorneys and Judges Disregarded Conflict of Interest</u>

Petitioner alleges that the prosecutor, defense attorneys, and district judges knew of the foregoing conflicts of interest and disregarded them, exhibiting bias and prejudice toward Petitioner.  He further alleges that, as a result of the bias of these individuals, he did not receive a fair trial or an accurate or adequate defense.

When a trial court is made aware of an attorney's actual or potential conflict of interest, the trial court must either appoint new counsel or take adequate steps to determine whether the risk is too remote to warrant appointment of new counsel.  *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978).  As noted above, where a prosecutor who has previously represented the wife of the accused fails to disclose the conflict, the court should consider whether any prejudice occurred to the accused.  *See U.S. v. Golston*, 53 M.J. at 66-67.  In Petitioner's post-conviction case, the state district court

determined that Petitioner "failed to provide any evidence of such bias, but merely offered unsubstantiated conclusory statements." (State's Lodging C-4, p. 7.)

This Court finds nothing to the contrary in the state court record. Petitioner points to no fact showing that any conflict of interest actually existed during the prosecution of his felony injury to child charge. And, even assuming that a conflict of interest existed by virtue of Mr. Campbell's previous representation of Petitioner's wife in a related matter, Petitioner has not shown that he was *actually prejudiced* by the prosecutor's subsequent representation of the state's interest in the probation revocation case.

Based on the foregoing, the Court concludes that Petitioner has not shown that the state court's decision on this claim was based on an unreasonable determination of the facts in light of the evidence, or that the decision was contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *See* 28 U.S.C. § 2254(d). Petitioner is not entitled to relief on this claim.

4.     Ineffective Assistance of Counsel- Mr. Swenson

Petitioner alleges that, in the 2002 felony injury to child case, Mr. Swenson did not file any documentation to support Petitioner's defense and "deliberately withheld evidence to botch up [Petitioner's] case." (Petition, p. 6, Docket No. 3-2.)

A criminal defendant has a right to assistance of counsel under the Sixth Amendment, made applicable to the states by the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335 (1963). In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set out the proper test to be applied to claims alleging

constitutionally inadequate representation during a criminal prosecution.  To succeed on

such a claim, a petitioner must show that (1) counsel's performance fell below an objective

standard of reasonableness, and (2) that the petitioner was prejudiced thereby.  *Id*. at 684.

Prejudice under these circumstances means there is a reasonable probability that, but for

counsel's errors, the result of the proceeding would have been different.  *Id*. at 684, 694.

A reasonable probability is one sufficient to undermine confidence in the outcome.  *Id*. at

694.

The state district court on post-conviction review found that Petitioner did not

"provide any evidence of such failure, bias, and malicious destruction of evidence" by

Petitioner's counsel.  (State's Lodging C-4, p. 8.)  In addition, the court found that, "when

changing his plea to guilty, Fox stated he was satisfied with the representation Swenson

offered."  (*Id*., referring to Court Minutes of October 29, 2002, p. 1.)

Here, Petitioner has not provided any evidence of the allegedly defective

representation by Mr. Swenson.  He does not state the content of the evidence that

allegedly was destroyed, nor does he provide any explanation of how Petitioner's counsel

could have handled the case differently.  He offers no reason why he stated that he was

satisfied with his attorney's performance when asked directly about his attorney at the

change of plea hearing, if he in fact was not satisfied.

The Court also has reviewed separately Mr. Swenson's representation of Petitioner

after the change of plea hearing, particularly at sentencing, to determine if deficient

performance or prejudice is evident from the record, or if there is anything in the record

that would support Petitioner's claim that counsel failed to file documentation to support Petitioner's defense or "deliberately withheld evidence to botch up [his] case."

The state court ordered a presentence investigation report. Mr. Swenson reviewed it with his client, and both Mr. Swenson and Petitioner agreed at the beginning of the sentencing hearing that no changes were necessary. (State's Lodging A-2, pp. 6-8.) Mr. Swenson objected to the victim's grandmother testifying at the hearing as a "victim." (*Id.*, pp.7-8.) Mr. Swenson called a witness, counselor Bonnie Frazer-Shewmaker, to testify that Petitioner was engaged in counseling, was making progress, and was remorseful for the crime. (*Id.*, pp. 17-26.) Mr. Swenson argued for a sentence that included probation. The court agreed with Mr. Swenson and allowed Petitioner the opportunity to prove himself with probation, even in light of Petitioner's significant criminal history. (*Id.*, p. 37.) Thus, Mr. Swenson obtained an excellent result for Petitioner at sentencing.

In light of the lack of evidence supporting Petitioner's claim of ineffective assistance of counsel of Mr. Swenson, the Court concludes that Petitioner has not shown that the state court's decision on this claim was based on an unreasonable determination of the facts in light of the evidence, or that the decision was contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *See* 28 U.S.C. § 2254(d). Habeas corpus relief is not warranted on this claim.

5.    <u>Ineffective Assistance of Counsel - Mr. Lammers</u>

Attorney Rockne Lammers represented Petitioner in the second criminal action, the domestic battery charge involving Petitioner' wife as the victim. (State's Lodging C-2,

Exhibit VI, pp. 1-2.)  Petitioner alleges that Mr. Lammers did not prepare any kind of defense for his case and "deliberately withheld evidence to botch up [Petitioner's] case." (Petition, p. 6, Docket No. 3-2).

Petitioner's 2005 felony domestic battery case (CV2005-717) is separate from Petitioner's 2002 felony injury to child case (CV2002-436).  Petitioner is not entitled to raise ineffective assistance of Mr. Lammers in this action, because the 2005 case is not at issue. As a result, the Court concludes that Petitioner has failed to state a claim upon which relief can be granted in this action with his complaints regarding Mr. Lammers' alleged ineffective assistance of counsel in his subsequent criminal case.

6.      Destroying or Withholding of Evidence

Petitioner alleges that "public officials" destroyed and withheld evidence to send Petitioner to prison.  If this were true, it would amount to a due process violation.  The state district court determined that Petitioner failed to provide any evidence of such actions, but merely offered "unsubstantiated conclusory statements of these alleged activities." *State's Lodging C-4*, p. 8.  Upon a review of the record, this Court agrees. This claim by Petitioner fails under § 2254(d)(1) & (2).

7.      Denying a Continuance on Probation Violation

Petitioner alleges that the court abused its discretion when it would not allow him a continuance of the disposition portion of his probation violation hearing when the violation centered on new criminal charges.  He sought to avoid the dilemma of having to waive his due process rights in order to preserve his right against self-incrimination.

Petitioner also argues that denial of the motion for a continuance caused him to face a constitutional "trilemma of self-accusation, perjury, or contempt,"[7] arguing that he was forced to choose between exercising his fundamental right to due process and his fundamental right to remain silent.

Petitioner raised this claim on direct appeal.  The Idaho Court of Appeals rejected the claim, reasoning:

> Proceeding in a probation violation matter prior to criminal proceedings involving the same conduct creates a difficult strategic choice for a criminal defendant, but does not impermissibly create conflict between his or her constitutional right to a meaningful opportunity to be heard and the right against self-incrimination.  *See State v. Wallace*, 138 Idaho 128, 58 P.3d 1281 (Ct. App. 2002).  Therefore, denying the continuance and conducting Fox's probation violation disposition prior to his criminal proceedings did not violate Fox's constitutional rights.  Thus, the district court did not abuse its discretion in denying Fox's motion for a continuance.

(State's Lodging B-5, p. 2.)

In rejecting Petitioner's claim, the Idaho Court of Appeals relied on an Idaho case, *State v. Wallace*, which in turn relied on a decision by the United States Court of Appeals for the Ninth Circuit, *Ryan v. State of Montana*, 580 F.2d 988 (1978), *cert. denied*, 440 U.S. 977 (1979).  The *Ryan* facts were quite similar to Petitioner's case, and the Ninth Circuit Court noted: "The Supreme Court has ruled that testimony is compelled in a manner forbidden by the purpose and intent of the self-incrimination clause when the state requires testimony under threat of certain noncriminal sanctions," relying on *Lefkowitz v.*

---

[7] *See Murphy v. Waterfront Com'n of New York Harbor*, 378 U.S. 52, 55 (1964).

*Turley*, 414 U.S. 70 (1973) ("*Turley*").  After *Turley*, the United States Supreme Court clarified that impermissible compulsion arising from a choice occurs only where "refusal to waive the Fifth Amendment privilege *leads automatically and without more* to imposition of sanctions."  *Ryan*, 580 F.2d at 991 (quoting *Lefkowitz v. Cunningham*, 431 U.S. 801, 808 n.5 (1977) (emphasis added) ("*Cunningham*")).

The Ninth Circuit found Mr. Ryan's case distinguishable, reasoning:

> [The] decision whether or not to testify was a strategic choice. No sanction followed automatically from his exercise of the privilege to remain silent. Rather, the absence of exculpatory information which Ryan might have furnished if he had decided to testify "was only one of a number of factors" which might figure in the probation revocation and sentencing determinations.

580 F.2d at 991.  Relying on *State v. Wallace*, which relied on *Ryan*, the Idaho Court of Appeals rejected Petitioner's claim.  (State's Lodging B-5.)

Here, Respondent argues that Petitioner's claim is subject to dismissal on two grounds: (1) that it is barred by *Teague v. Lane*, 489 U.S. 288 (1989); and (2) that it fails on the merits.  The Court now addresses each argument.

      *a.*    *Teague* Argument

The *Teague* "nonretroactivity principle prevents a federal court from granting habeas corpus relief to a state prisoner based on a rule announced after his conviction and sentence became final." *Caspari v. Bohlen*, 510 U.S. 383, 389 (1994). Under *Teague*, a new rule of criminal procedure may not be applied or announced in a habeas corpus case unless the rule falls within one of two narrow exceptions. *Penry v. Lynaugh*, 492 U.S. 302,

313 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002).

When a *Teague* defense is raised, the Court is required to decide that issue before

addressing the merits of the claim.  *Horn v. Banks*, 536 U.S. 266 (2002).

*Teague* applies only to new rules of criminal procedure.  Decisions of "criminal

procedure" are those decisions that implicate how the criminal trial process functions.

Decisions of "substantive criminal law," by contrast, are those that reach beyond issues of

procedural function and address the meaning, scope, and application of substantive

criminal statutes. *Bousley v. U.S.*, 523 U.S. 614, 620 (1998).  For *Teague* purposes, a new

rule is one of "procedure" if it impacts the operation of the criminal trial process, and a

new rule is one of "substance" if it alters the scope or modifies the applicability of a

substantive criminal statute. *Bousley*, 523 U.S. at 620.

To determine whether a claim is barred by *Teague*'s non-retroactivity principles, a

reviewing court engages in a three-step process.  First, the court must ascertain the date on

which the defendant's conviction and sentence became final.  *Caspari v. Bohen*, 510 U.S.

at 390.  Second, the court must survey "the legal landscape as it then existed" to determine

whether existing precedent compelled a finding that the rule at issue "was required by the

Constitution."  *Lambrix v. Singletary*, 520 U.S. 518, 527 (1997).

If the rule is considered "new," the court must proceed to the third step and

determine whether either of the two announced exceptions applies.  *Teague*, 489 U.S. at

307.  The presumption against retroactivity is overcome only if the new rule prohibits "a

certain category of punishment for a class of defendants because of their status or offense,"

*Penry v. Lynaugh*, 492 U.S. at 330, or presents a new "watershed rule of criminal procedure" that enhances accuracy and alters our understanding of bedrock procedural elements essential to the fairness of a particular conviction. *Teague*, 489 U.S. at 311.

As characterized by Respondent, the proposed new rule here is that a Fifth or Fourteenth Amendment violation would arise if a court refused "to continue a probation hearing where the crime which serves as the basis for the probation violation has not yet been prosecuted." (Respondent's Memorandum, p. 9, Docket No. 18-3.)  Respondent argues that Petitioner can point to no United States Supreme Court precedent dictating that rule when the Idaho Court of Appeals determined his case in March 2006.

In general, the Fifth Amendment right against self-incrimination "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." *Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990).  "The Fifth Amendment prohibits use by the prosecution in its case in chief only of *compelled* testimony." *Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985) (emphasis in original).  In *Turley* and *Cunningham*, the narrower cases discussed above, the United States Supreme Court has rejected Fifth Amendment arguments similar to Petitioner's unless the penalty for remaining silent is automatically imposed upon invocation of that right.

The Court concludes that, to grant Petitioner's claim would require a significant departure from the principles established in *Turley* and *Cunningham*, a result that is foreclosed by *Teague*.  The particular facts of this case are: (1) the state did *not* compel

Petitioner to testify at his probation hearing; (2) Petitioner did not, in fact, testify at the hearing; (3) Petitioner was not threatened with an immediate penalty if he did not testify; and (4) the continuance request did not ask the court to postpone the hearing to determine whether the terms of Petitioner's probation were violated, but only to postpone final disposition of the probation violation, that is, to determine whether it warranted incarceration.  (State's Exhibit A-2, p. 80.)  The Court agrees with Respondent that, at the time the Idaho Court of Appeals decided Petitioner's case in March 2006, no particular United States Supreme Court case dictated the result Petitioner seeks here–that one's right to due process and right to remain silent are violated by the mere choice between testifying or not testifying at a probation hearing where the outcome is the result of the evidence produced at hearing rather than the automatic imposition of a penalty when one invokes the right to remain silent.

The Court also concludes that neither *Teague* exception applies. The proposed new rule does not prohibit "a certain category of punishment for a class of defendants because of their status or offense."  *Penry v. Lynaugh*, 492 U.S. at 330.  Neither does the new rule present a new "watershed rule of criminal procedure" that would enhance accuracy and alter our understanding of bedrock procedural elements essential to the fairness of a particular conviction.  *Teague*, 489 U.S. at 311.  The Court agrees with Respondent's reasoning that the standard for a "new watershed rule" is extremely high and not met by the facts of this case.  For example, the United States Supreme Court concluded in *Schriro v. Summerlin*, 542 U.S. 348 (2004), that the holding of *Ring v. Arizona*, 536 U.S. 584

(2002), which changed the standard from allowing a judge to find statutory aggravating factors to requiring that finding be made by a jury in death penalty cases, was not even a "new watershed rule of criminal procedure" within the second *Teague* exception. Petitioner's claim will be denied.

> b.     *Merits Argument*

Respondent also argues that Petitioner has failed to show that the state court opinion was contrary to or an unreasonable application of Supreme Court precedent under § 2254(d)(1).  It is not necessary for the state court decision to specifically rely upon United States Supreme Court cases; rather, the standard is simply that "neither the reasoning nor result of the state-court decision contradict[] them."  *Early v. Packer*, 537 U.S. 3, 8 (2002).  Here, the Idaho Court of Appeals relied on a state case, which itself relied on a Ninth Circuit case, which in turn relied upon United States Supreme Court precedent.  In any event, as demonstrated directly above, Petitioner has not shown that the Idaho Court of Appeals' opinion contradicts United States Supreme Court precedent governing the issue of compelled testimony as a Fifth Amendment violation.  The Court concludes that no relief under that precedent is warranted.

The Court also has reviewed other United States Supreme Court precedent to determine whether any other cases might apply and dictate a different result.  The particular issue at hand is the disposition phase of the probation revocation hearing. Petitioner did not move to continue the guilt phase of the hearing and instead chose to remain silent, seeking a continuance just prior to disposition.  Nevertheless, because the

MEMORANDUM DECISION AND ORDER 24

choices in both phases are interrelated, the Court reviews both the guilt and the disposition

phase to determine whether, in either circumstance, presentation of the choice itself was so

onerous as to be unconstitutional.

Petitioner's case is somewhat analogous to the facts of *Minnesota v. Murphy*, 465

U.S. 420 (1984), which is newer than *Turley* and *Cunningham*, discussed above.  In that

case, Mr. Murphy, who was on probation for a sex crime, was required to meet with, and

be truthful to, his treatment counselor as a condition of probation.  During a meeting, Mr.

Murphy told his treatment counselor that he had previously committed a rape and murder.

The treatment counselor told Mr. Murphy's probation officer, and Mr. Murphy was later

indicted for the rape and murder.  Mr. Murphy sought to suppress the statement, arguing

that it was, in effect, "compelled" in violation of the Fifth and Fourteenth Amendments.

The *Murphy* Court noted that, in some probationary circumstances, the Fifth

Amendment might be implicated:

> Our cases indicate, moreover, that a state may validly insist on answers to
> even incriminating questions and hence sensibly administer its probation
> system, as long as it recognizes *that the required answers may not be used in
> a criminal proceeding and thus eliminates the threat of incrimination*. Under
> such circumstances, a probationer's "right to immunity as a result of his
> compelled testimony would not be at stake," and nothing in the Federal
> Constitution would prevent a State from revoking probation for a refusal to
> answer that violated an express condition of probation or from using the
> probationer's silence as "one of a number of factors to be considered by a
> finder of fact" in deciding whether other conditions of probation have been
> violated.

465 U.S. at 435 (citing *Cunningham*; other internal citations omitted).

Here, Petitioner was *not* compelled to testify, nor did he testify, at the probation

hearing.  Had Petitioner been compelled to testify about the domestic battery incident at

the probation hearing, he would have had the right to "refuse to answer unless and until he

[was] protected at least against the use of his compelled answers and evidence derived

therefrom in any subsequent criminal case in which he [was] a defendant." *Turley*, 414

U.S. at 78.

The *Murphy* Court also explained under what circumstances a *choice* could amount

to coercion in a probation setting:

> [W]e must inquire whether Murphy's probation conditions merely
> required him to appear and give testimony about matters relevant to his
> probationary status or whether they went farther and required him to choose
> between making incriminating statements and jeopardizing his conditional
> liberty by remaining silent. Because we conclude that Minnesota did not
> attempt to take the extra, impermissible step, we hold that Murphy's Fifth
> Amendment privilege was not self-executing.

465 U.S. at 465.

Similarly, here there is no indication in the record that Petitioner's Fifth

Amendment privilege was self-executing, meaning that a penalty was automatic, such that

a constitutional violation would arise.  Petitioner was *not* required to choose between

testifying or losing his probation status automatically upon a refusal to testify.

Petitioner did not testify and presented no evidence at the hearing.  The State called

as witnesses the victim and the police officer who had responded to the scene of the

domestic violence incident.  (State's Lodging, pp.51-79.)  Petitioner's counsel

cross-examined the witnesses. The court determined that the evidence was "undisputed,"

and that defendant was guilty of the probation violation by a preponderance of the

evidence "based upon the undisputed evidence rule."[8]  (State's Lodging A-2, at 79.)  It is further evident from the testimony of the victim and other witnesses that there were adequate factual grounds for the probation revocation, especially given the lower evidentiary standard applicable in probation settings.

In the disposition phase of the hearing, the State presented the testimony of the probation officer who wrote the report of violation to the judge, recommending revocation of probation and imposition of the original sentence.  (State's Exhibit A-1, pp. 81-84.) The state district court presented Petitioner with an opportunity to speak, which he declined on Fifth Amendment grounds.  Petitioner presented no other witnesses or evidence.  After the prosecutor and Petitioner's attorney made their arguments, the court

---

[8]  "The undisputed evidence rule" is cited in two obscure Texas cases regarding procedures on determining the voluntariness of a suspect's confession in alleged police coercion circumstances.  *See Gilbert v. State*, 265 S.W.2d 100 (Tex. Cr. App. 1954); *Sampson v. State*, 268 S.W.2d 661 (Tex. Cr. App. 1954). That rule, derived from two earlier United States Supreme Court cases, appears to be that a reviewing court may "accept a jury verdict and judgment as a permissible resolution of contradictions in evidence or conflicting inferences [regarding the alleged confession] unless . . . undisputed facts indicate use of incorrect constitutional standards of judgment."  *Stein v. People of State of New York*, 346 U.S. 156, 182 (1953).  *Stein* was overruled in part by *Jackson v. Denno*, 378 U.S. 368, 391 (1964), which held that the procedures used in the trial court to arrive at its conclusions on the coercion issue must be "fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend."

Even though the state judge in Petitioner's case stated that he was using "the undisputed evidence rule," it appears that he is simply referring to the fact that the evidence presented was undisputed, and *not* referring to this obscure, inapplicable, and partially overruled rule last referenced in Texas in 1954.  The Idaho Court of Appeals obviously read the ruling as a general reference to the evidence being undisputed, and there is nothing in the record or in the law that would cause this Court to conclude that because the Idaho Court of Appeals included such an interpretation of the lower court's conclusion by implication in its ruling, the Idaho Court of Appeals' decision is objectively unreasonable in fact or law.  *See Williams v. Taylor*, 529 U.S. at 411; *Ramdass v. Angelone*, 530 U.S. 156, 165-66 (2000) (citation omitted).

revoked probation and ordered that the original sentence be served.  The state court cited

to Petitioner's "long history of violence," his four felony convictions, and his failed

attempt to rehabilitate himself while on probation.  Finally, the court noted its concern that

Petitioner might kill someone if he were not incarcerated.  (*Id.*, pp.91-94.)  Nothing in the

record of the disposition hearing shows that Petitioner's revocation and imposition of the

original ten-year sentence were the result of Petitioner's invocation of his Fifth

Amendment right, rather than the evidence and analysis cited by the state district court.

In summary, "imposing a penalty for a valid exercise of the Fifth Amendment

privilege could impermissibly foreclose a free choice to remain silent." *Murphy*, 465 U.S.

at 436.  While one could make the theoretical argument that the state court considered

Petitioner's silence at the guilt phase because it stated that the evidence was "undisputed,"

it is far more likely, given the strong evidence presented at the hearing and Petitioner's

opportunity to have presented evidence other than his own testimony, that the court was

referring to only the evidence actually presented, not the factor of silence.  Because either

is a reasonable interpretation, and Petitioner has not brought forward clear and convincing

evidence to the contrary, the state court decision was not unreasonable in fact or law.  *See*

*Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(e)(1); *Williams*, 529 U.S. at 411.

Similarly, nothing in the penalty phase of the hearing shows that the court

considered Petitioner's silence when it imposed the original sentence.  Here, a penalty was

not imposed for Petitioner's exercise of the right to remain silent; rather, a penalty was

imposed as a result of the evidence presented at the hearing that warranted revocation of

MEMORANDUM DECISION AND ORDER 28

probation to ensure the safety of Petitioner's family members.

Based on all of the foregoing, the Court concludes that the *Murphy* case, governing self-executing Fifth Amendment circumstances, as well as the other Fifth Amendment cases cited above, provide no basis for federal habeas corpus relief here.  The Idaho Court of Appeals' decision that the circumstances did not result in a constitutional violation is not contrary to United States Supreme Court precedent, neither does it represent an unreasonable determination of the facts in the record.  As a result, relief under §2254(d) is not warranted.

Respondent additionally argues that, if Petitioner's claim can be construed as one that he had a right to allocute at the disposition hearing, this is an argument grounded upon a state rule, not the federal Constitution.  *See McGautha v. California*, 402 U.S. 183, 228 n.7 (1971).  In Idaho, the right to allocute is conferred by Rule 33(a)(1) of the Idaho Rules of Criminal Procedure: "Before imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally to ask if the defendant wishes to make a statement and to present any information in mitigation of punishment."

In *State v. Gervasi*, 69 P.2d 1074 (Idaho Ct. App. 2003), the court explained the state-law nature of the right of allocution:

> While a denial of allocution has not been held to constitute a denial of due process under the United States Constitution, and therefore does not implicate a federal constitutional right, like those waived by a guilty plea, states are free to provide greater protections than those afforded at the federal level. *See State v. Donato*, 135 Idaho 469, 471, 20 P.3d 5, 7 (2001); *Oregon v. Hass*, 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570,

575 (1975). We are persuaded that allocution is so important a right that a
court's failure to meet its obligation to allow a defendant the opportunity of
allocution should be subject to challenge on appeal as fundamental error.

*Id.* at 1077.

Based on all of the foregoing, the Court agrees with Respondent's argument that
denial of the right to allocute is a state-law claim that is not subject to federal habeas
corpus review.  "'[F]ederal habeas corpus relief does not lie for errors of state law.'"
*Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780
(1990)).  Construed as a claim that his right to allocution was denied, the claim is subject
to dismissal for failure to state a federal claim upon which relief can be granted.

       7.      <u>Sentencing Claims: Abuse of Judicial Process, Excessive Sentence, and
ADA</u>

Petitioner has made five claims regarding his sentence: First, Petitioner alleges that
his sentence violates the Eighth Amendment because it was excessive as initially imposed,
and that the court should have granted his Rule 35 motion to reduce the sentence after
probation was revoked.  He argues that he suffers from multiple hereditary extosis, which
causes severe deformity and numerous tumors throughout his skeletal system; he also
argues that the state court did not reach its decision through an exercise of reason and
failed to consider the serious implications of Petitioner's health.

Second, Petitioner alleges that he cannot obtain adequate surgeries that he needs in
prison, and that his Eighth Amendment rights are violated thereby.  Third, he argues that

his sentence violates the Americans with Disabilities Act (ADA).[9] (Petition, pp. 7-8, Docket No. 3-2.)

Fourth, on direct appeal, Petitioner argued that the state district court did not consider the mitigating circumstances.  Fifth, on post-conviction review, Petitioner argued that sentencing a handicapped person was an abuse of the judicial process.

At sentencing, the state court made no mention of mitigating factors when pronouncing its original sentence, but it focused on protection of society and provided Petitioner an opportunity to prove himself on probation.  (State's Lodging A-2, p. 37.) When Petitioner made his Rule 35 request for reduction of sentence after the probation violation, the court focused on protection of society, and, particularly, protection of Petitioner's own wife.  The court also noted that Petitioner had not shown he was capable of living in society under probation.  In ordering the original sentence to be served, the court noted the mitigating factor of Petitioner's documented "marginal intelligence" condition, but stated that the factor of protection of society was an overriding concern. (*Id.*, pp. 91-94.)

> a.    *Eighth Amendment*

Petitioner has failed to show that his sentence is excessive under Eighth Amendment standards.  At the time the Idaho Court of Appeals rendered its opinion in March 2006, no precedent from the United States Supreme Court existed that would

---

[9]  Americans with Disabilities Act of 1990, § 1, *et seq*, as amended, 42 U.S.C. §12101, *et seq*. (Title I), § 2132, *et seq*. (Title II), §12181, *et seq*. (Title III).

support Petitioner's argument of a constitutionally excessive sentence.  *See Hutto v. Davis*,

454 U.S. 370, 372 (1982) ("this Court has never found a sentence for a term of years

within the limits authorized by statute to be, by itself, a cruel and unusual punishment");

*Harmelin v. Michigan*, 501 U.S. 957, 965 (1991) (plurality opinion affirming a Michigan

court judgment sentencing the defendant to a statutory mandatory life sentence without the

possibility of parole for possessing more than 650 grams of cocaine).  Because Petitioner's

sentence of ten years fixed (State's Lodging A-2, p. 37), is within the statutory maximum

for his offense, I.C. § 18-1501(1) (2006), and is not "extreme" or "grossly disproportionate

to the crime," *Harmelin*, 501 U.S. at 1001, it is not contrary to existing United States

Supreme Court precedent.  Therefore, Petitioner is not entitled to relief under §2254.

### b. Inadequate Prison Medical Care

Petitioner's argument that his physical problems should have prevented his

incarceration because he cannot obtain adequate medical care in prison does not provide a

basis for federal habeas corpus relief.  Rather, the state is required by the Constitution to

provide adequate medical care to all prisoners in any health condition.  Any such claim is

not cognizable on federal habeas corpus review, but instead could be asserted in a

complaint under 42 U.S.C. § 1983, the civil rights statute.

### c. The ADA

In his federal habeas corpus petition, Petitioner also alleges that his conviction

violates the ADA.  He appears to be arguing that a handicapped person should not be

convicted or sentenced.  No Supreme Court precedent supports his position.  The Fifth

Circuit has held that the ADA "neither addresses the imposition of criminal penalties, nor does it suggest that mentally disabled Americans should be treated differently from other Americans who commit crimes." *See Bell v. Cockrell*, 310 F.3d 330, 334 (5th Cir. 2002). The ADA offers no basis for relief on Petitioner's facts.

> d.      *Failure to Consider Mitigating Circumstances*

The Court first notes that an excessive sentence claim based on a state "abuse of discretion" theory is not cognizable on federal habeas corpus review. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). Construed as a federal issue, Petitioner's claim fares no better. Petitioner has pointed to no United States Supreme Court *requiring* state courts to order a reduced sentence based on mitigating circumstances. *See Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978) (In a case holding that mitigating factors must be fully considered in death penalty cases, the Court noted: "We recognize that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes."). The Ninth Circuit has determined that there is no Eighth Amendment or due process right to have mitigating evidence considered in noncapital sentencing. *U.S. v. LaFleur*, 971 F.2d 200 (9th Cir. 1991). Accordingly, Petitioner's claim is subject to dismissal for failure to state a federal claim upon which relief can be granted because it challenges an issue of state law.

> e.      *Abuse of Judicial Process*

Petitioner alleges that public officials in Jerome and Gooding County abused the judicial process and sent a handicapped person to prison because they were biased and

prejudiced.  The state district court on post-conviction review noted that "[t]o demonstrate this bias, Fox points to this court's denial of his Motion for a Continuance at disposition on the Motion to Revoke Probation, and this Court's failure to consider his mental dysfunction as mitigating factors in his Rule 35 Motion."  (State's Lodging C-4, p. 5.) That court also noted that these were the same claims raised on direct appeal--whether the court "abused its discretion by failing to reveal multiple factors involving Fox's illness," and, as a result, Petitioner could not raise them on post-conviction review.  (State's Lodging C-4, p. 7.)

On direct appeal, the Idaho Court of Appeals determined that the state district court had not abused its discretion in denying the Rule 35 motion.  The Idaho Court of Appeals did not otherwise particularly address the issues of failure to consider Petitioner's mental dysfunction.  (State's Lodging B-5. p. 2.)  Petitioner argued on appeal that his sentence should have been more lenient based upon his difficult upbringing, his mental dysfunction, and his ability to progress in counseling.  (State's Lodging B-3, pp. 8-11.)

As set forth directly above, Petitioner has pointed to no United States Supreme Court precedent *requiring* state courts to order a reduced sentence based on the types of mitigating circumstances brought forward by Petitioner under an abuse of process (or due process) theory.  *Lockett* and *LaFleur* are grounded on the concept that mitigation is not a constitutional component of sentencing except in capital cases.  Rather, it is an issue of state law.  Therefore, Petitioner's claim is subject to denial for failure to state a claim upon which relief can be granted.

MEMORANDUM DECISION AND ORDER 34

C.      **Conclusion**

Because Petitioner's claims are procedurally barred, fail to state a claim upon which relief can be granted, or are subject to denial on the merits, Respondent's motion for summary judgment shall be conditionally granted.  Petitioner shall have an opportunity to provide any final response within sixty (60) days after entry of this Order to avoid dismissal of his case in its entirety.

# ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

A.      Petitioner's Motion for Appointment of Counsel (Docket No. 14) is

        DENIED.

B.      Respondent's Motion for Extension of Time to File a Motion for Summary

        Judgment (Docket No. 17) is GRANTED.

C.      Respondent's Motion for Leave to File Excess Pages (Docket No. 18) is

        GRANTED.

D.      Respondent's Motion for Summary Judgment (Docket No. 18) is

        CONDITIONALLY GRANTED.

E.      Petitioner shall have sixty (60) days from the date of entry of this Order to

        file a brief providing any facts or argument to oppose summary judgment.

        Failure to do so shall result in the conditional granting of the motion

        becoming a final order and in dismissal of the petition with prejudice.

DATED: March 27, 2009

Honorable Candy W. Dale
Chief United States Magistrate Judge